NO. 25-50311

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

LOUIS FLORES,

Plaintiff-Appellee

v.

Felix Perez, in his individual capacity; Jackson Pierron, in his individual capacity; Jorge Pastore, in his individual capacity,

Defendants-Appellants

---

On Appeal from Cause No. 1:23-CV-00673-DAE
In the United States District Court, Western District of Texas
Honorable David A. Ezra, Presiding

---

## BRIEF OF APPELLANTS FELIX PEREZ, JORGE PASTORE AND JACKSON PIERRON

---

DEBORAH THOMAS, City Attorney
SARA R. SCHAEFER, Acting Chief, Litigation
H. GRAY LAIRD, Assistant City Attorney
State Bar No. 24087054
gray.laird@austintexas.gov
Monte L. Barton Jr., Assistant City Attorney
State Bar No. 24115616
monte.barton@austintexas.gov
City of Austin Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone: (512) 974-2409
Facsimile: (512) 974-1311
**COUNSEL FOR APPELLANTS**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**DEFENDANT – APPELLANT**
Felix Perez
c/o H. Gray Laird and Monte L. Barton, Assistant City Attorneys
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546

**DEFENDANT – APPELLANT**
Jorge Pastore
c/o H. Gray Laird and Monte L. Barton, Assistant City Attorneys
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546

**DEFENDANT – APPELLANT**
Jackson Pierron
c/o H. Gray Laird and Monte L. Barton, Assistant City Attorneys
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546

**COUNSEL FOR DEFENDANTS – APPELLANTS**
Deborah Thomas, City Attorney
Sara R. Schaefer, Acting Chief, Litigation Division
H. Gray Laird III, Assistant City Attorney
Monte L. Barton, Assistant City Attorney
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546

**PLAINTIFF – APPELLEE**
Louis Flores

**COUNSEL FOR PLAINTIFF – APPELLEE**
Jeff Edwards
David James
Michael Singley
Lisa Snead
Paul Samuel
Edwards Law Group
603 W. 17th Street
Austin, Texas 78701

<u>/s/ H. Gray Laird III</u>
H. Gray Laird III
Attorney of Record for Appellants
Felix Perez, Jorge Pastore, and
Jackson Pierron
**August 18, 2025**

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ..................................................... ii

**TABLE OF CONTENTS** .................................................................................... iv

**INDEX OF AUTHORITIES** .............................................................................. vi

**STATEMENT REGARDING ORAL ARGUMENT** ..........................................1

**STATEMENT OF THE RECORD** ....................................................................1

**STATEMENT OF JURISDICTION** .................................................................1

**STATEMENT OF ISSUES** ................................................................................2

**STATEMENT OF THE CASE**...........................................................................2

**A.  Procedural History** ...................................................................................2

**B.  Relevant Facts** .........................................................................................4

**SUMMARY OF ARGUMENT** ..........................................................................8

**ARGUMENT** ....................................................................................................10

**A.  Standard of Review:  Qualified Immunity and Interlocutory Appeal** .......10

**B.  Qualified Immunity and Plaintiff's Claims of Excessive Force** .................11
  1.  The Qualified Immunity Standard ..............................................................11
  2.  Excessive Force Standard .........................................................................12
  3.  The District Court erred in denying qualified immunity to Officer
  Perez. ...........................................................................................................14

**C.  Perez's takedown of Flores was not clearly excessive and objectively
unreasonable.** ..................................................................................................15

**D.   The officers' limited uses of force while attempting to handcuff Flores were not clearly excessive and objectively unreasonable.** ...................................19

**E.   The District Court erred in determining that the unlawfulness of the officers' conduct was clearly established at the time of this incident.** ..............22

**CONCLUSION AND PRAYER FOR RELIEF** ...................................................31

**CERTIFICATE OF SERVICE** ...........................................................................32

**CERTIFICATE OF COMPLIANCE**...ERROR! BOOKMARK NOT DEFINED.

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) ....................................................16

*Atteberry v. Nocona General Hospital,* 430 F.3d 245 (5th Cir. 2005). ....................12

*Buehler v. Dear,* 27 F.4th 969 (5th Cir. 2022) ......................................... 17, 18, 29, 30

*Byrd v. City of Bossier,* 23 F.Supp.3d 665 (W.D. La. 2014) ............................. 14, 21

*Cadena v. Ray,* 728 Fed. App's 293 (5th Cir. 2018) ..................................................30

*Cole v. Carson,* 935 F.3d 444 (5th Cir. 2019) ...........................................................10

*Defrates v. Podany,* 789 Fed. App'x 427 (5th Cir. 2019) ................................... 30, 31

*Garcia v. Orta,* 47 F.4th 343 (5th Cir. 2002) ....................................................2, 10, 11

*Gonzalez v. Allen,* 2013 WL 5157188 (S.D. Tex. 2013) ................................... 13, 21

*Graham v. Connor,* 490 U.S. 386 (1989) ........................................................... 13, 14

*Griggs v. Brewer,* 841 F.3d 308 (5th Cir. 2016) .............................................. 18, 27, 28

*Hill v. Carroll Cty., Miss.,* 587 F.3d 230 (5th Cir. 2009) .........................................18

*Ibarra v. Harris Cty.,* 243 Fed. App'x 830 (5th Cir. 2007) ......................................30

*Ikerd v. Blair,* 101 F.3d 430 (5th Cir. 1996) .............................................................12

*Joseph ex rel. Est. of Joseph v. Bartlett,* 981 F.3d 319 (5th Cir. 2020) ...................10

*Kisela v. Hughes,* 584 U.S. 100 (2018) .....................................................................22

*Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009). ......................................13

*Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003)........................................11

*Malley v. Briggs*, 475 U.S. 335 (1986). .......................................................12

*Manis v. Lawson*, 585 F.3d 835 (5th Cir. 2009) ..............................................12

*Mathews v. Davidson*, 674 Fed. App'x 394 (5th Cir. 2017) ....................................30

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)......................................................2

*Modica v. Taylor*, 456 F.3d 174 (5th Cir. 2006) ..............................................11

*Morrow v. Meachum* 917 F.3d 870 (5th Cir. 2019)............................................10

*Mullenix v. Luna*, 577 U.S. 7 (2015)...................................................... 10, 22

*Pearson v. Callahan*, 555 U. S. 223 (2009))..............................................10, 11

*Plumhoff v. Rickard*, 572 U.S. 765 (2014). ...................................................22

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012)........................ 13, 14, 21

*Price v. Roark*, 256 F.3d 354 (5th Cir. 2001). .........................................11, 12

*Priest v. Grazier*, 860 Fed. App'x 343 (5th Cir. 2021)...............................30

*Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008) ....................................... 12, 19

*Robles v. Ciarletta*, 797 Fed. App'x 821 (5th Cir. 2019)..........................30

*Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011) ....................................13

*Saucier v. Katz*, 533 U.S. 194 (2001),....................................................11

*Tennyson v. Villarreal,* 801 Fed. App'x, 295 (5th Cir. 2020) .....................................30

*Thomas v. Tregre,* 913 F.3d 458 (5th Cir. 2019)( .......................................................16

*Trammell v. Fruge,* 868 F.3d 332 (5th Cir. 2017) ............................................. passim

*Tucker v. City of Shreveport,* 998 F.3d 165 (5th Cir. 2021) .............................. 26, 27

*United States v. Sharpe,* 470 U.S. 675 (1985). ........................................................19

**Statutes**

28 U.S.C. §1291 ...........................................................................................................2

42 U.S.C. §1983 ...........................................................................................................2

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants Felix Perez, Jorge Pastore and Jackson Pierron request the opportunity to present oral argument to assist in the preparation of the issues and because this Court's decisional process would be aided by oral argument. This is a complex case involving the denial of qualified immunity for an excessive force claim.

## STATEMENT OF THE RECORD

In compliance with Fifth Circuit Rule 28.2.2 and Fifth Circuit Court of Appeals Form 1, Guidance for Record References as directed by the Clerk of the Court, the Record on Appeal will be referenced following the short form "ROA" followed by a period, followed by the page number.

## STATEMENT OF JURISDICTION

This appeal arises from the denial of Officers Perez, Pastore and Pierron's motions for summary judgment based on their assertions that they are entitled to the defense of qualified immunity. On March 18, 2025, the District Court issued an order granting in part and denying in part the motions for summary judgment filed by Officer Perez, Officer Pastore and Officer Pierron.[1] On April 16, 2025, Officer

---

[1] **ROA.25-50311.4653-4695.**

Perez, Officer Pastore and Officer Pierron filed their Notice of Interlocutory Appeal.[2]

Under 28 U.S.C. §1291, a district court's denial of a motion for summary judgment is not generally a final decision that is immediately appealable. However, the denial of qualified immunity is immediately appealable under the collateral order doctrine when based on an issue of law.[3] Accordingly, this Court does not have jurisdiction to review the genuineness of a fact issue identified by the district court precluding qualified immunity, but it may review the legal materiality of the district court's identified fact issue precluding qualified immunity.[4]

## STATEMENT OF ISSUES

Did the District Court err in denying the motions for summary judgment of Officers Felix Perez, Jackson Pierron and Jorge Pastore based on qualified immunity on Plaintiff Louis Flores's claims arising under 42 U.S.C. §1983 for the alleged use of excessive force?

## STATEMENT OF THE CASE

### A.    Procedural History

Plaintiff Louis Flores was arrested for the misdemeanor offenses of interference with a police service animal, resisting arrest and resisting transport on

---

[2] ROA.25-50311.4697-4698.
[3] *Garcia v. Orta,* 47 F.4th 343, 349 (5th Cir. 2022); *see also Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985).
[4] *Id.* at 350-51.

January 15, 2023. Flores's arrest occurred after Officer Felix Perez saw Flores grab the reigns of a police service horse during the early morning hours on Sixth Street in the downtown Austin entertainment district. After the criminal charges were dismissed, Flores filed suit against Officer Perez, Officer Pastore and Officer Pierron asserting claims under 42 U.S.C. §1983 for excessive force and bystander liability.[5] Flores also asserted a *Monell* claim against the City of Austin.[6]

Officers Perez, Pastore and Pierron filed motions for summary judgment seeking dismissal of all claims asserted against them, asserting their entitlement to qualified immunity.[7] The City of Austin filed a motion for summary judgment seeking dismissal of all claims asserted against it.[8] On March 18, 2025, the District Court issued an order granting in part and denying in part the motions for summary judgment filed by Officer Perez, Officer Pastore and Officer Pierron.[9] The District Court denied the Officers' motion for summary judgment on the excessive force claim and granted the motion for summary judgment on the bystander liability claim.[10] The District Court granted the City of Austin's motion for summary judgment in its entirety and dismissed all claims asserted against the City of

---

[5] ROA.25-50311.23-56.
[6] ROA.25-50311.23-56.
[7] ROA.25-50311.194-208.
[8] ROA.25-50311.385-401.
[9] ROA.25-50311.4653-4695.
[10] ROA.25-50311.4653-4695.

Austin.[11] Officers Perez, Pastore and Pierron filed their notice of interlocutory appeal on April 16, 2025.[12]

## B.    Relevant Facts

This lawsuit arises out of an incident which occurred at approximately 2:00 a.m. on January 15, 2023 on Sixth Street in Austin, Texas. APD Officers Perez, Pierron and Pastore were conducting police patrol duties on Sixth Street shortly after the bars in Austin's entertainment district closed at 2:00 am.[13]    Officer Perez observed a group of APD officers mounted on their APD service horses traveling east on Sixth Street assisting other officers clearing the crowded streets.[14] Perez saw Plaintiff Louis Flores, who was intoxicated and wearing a white shirt and blue jeans, approach one of the horses and grab and pull the horse's reins.[15] According to mounted Officer Jermaine Kilgore, Flores grabbed and pulled the left rein of Kilgore's horse, and Flores then struck another police horse.[16]

Police body worn camera videos show portions of Flores's encounter with the horses. The body worn camera of Officer Patrick Cheatham, one of the mounted officers, shows Flores in a white shirt approach Kilgore's horse and move his hand

---

[11] **ROA.25-50311.4653-4695**.
[12] **ROA.25-50311.4697-4698**.
[13] **ROA.25-50311.5064-5065**.
[14] **ROA.25-50311.5096-5097**.
[15] **ROA.25-50311.209-210**; **ROA.25-50311.5068-5069**; **ROA.25-50311.5074-5075**.
[16] **ROA.25-50311.212-213**.

near the horse's reigns.[17] The body worn camera of Officer Nick Recalde shows Flores with his right hand balled up in a fist near the horse's head and his left hand near the horse's reigns.[18] Kilgore reaches down and swats at Flores's hand.[19] Flores admits that he was intoxicated, and that his hand was within inches of the horse's head.[20]

In response to Flores's actions, Perez made the decision to arrest Flores for interference with a police service animal because Flores's actions put the officer riding the horse and pedestrians in the immediate area in danger.[21] Perez, who was wearing his standard APD uniform, ran toward Flores to arrest him for interference with a police service animal and told Flores to put his hands behind his back.[22] Perez initially grabbed both arms of Flores in an effort to handcuff him.[23] After Perez grabbed Flores's arms, Flores pulled his right arm out of the grasp of Perez and began shifting his body weight away from Perez.[24] Perez considered Flores's actions of pulling out of Flores's grasp to be defensive resistance, and when Flores shifted his weight away from Perez, Perez believed that Flores may have been trying to flee and evade arrest.[25]

---

[17] **ROA.25-50311.214** at timestamp 02:13:50.
[18] **ROA.25-50311.384** beginning at timestamp 02:13:53.
[19] **ROA.25-50311.214** at timestamp 02:13:56.
[20] **ROA.25-50311.218**; **ROA.25-50311.228**.
[21] **ROA.25-50311.5076-5077**.
[22] **ROA.25-50311.5077**; **ROA.25-50311.293** at timestamp 02:13:51.
[23] **ROA.25-50311.5079**; **ROA.25-50311.383** beginning at timestamp 02:14:01.
[24] **ROA.25-50311.5082**; **ROA.25-50311.383** beginning at timestamp 02:14:01.
[25] **ROA.25-50311.5082-5083**.

Due to Flores's resistance, Perez believed it was necessary to regain control of Flores so he decided to take Flores to the ground so Perez and other officers could control Flores's movements and take him into custody.[26] Perez then performed a leg sweep takedown of Flores and took Flores to the ground.[27] After Perez took Flores to the ground, Perez continued to instruct Flores to put his hands behind his back, and Flores did not comply with the instructions.[28] Perez placed his knee briefly for a few seconds across Flores's beltline to keep Flores from accessing any potential weapons in his waistband or pockets.[29]  Perez also held onto Flores's left arm and attempted to roll Flores over onto his stomach so officers could handcuff Flores.[30] While holding onto Flores's left arm, Perez felt Flores flexing his arm and at one point, Flores again was able to break Perez's grasp.[31] Perez then placed his hand on Flores's face for a few seconds, and he and other officers were able to handcuff Flores.[32]

Austin Police Officers Jackson Pierron and Jorge Pastore were working downtown patrol in the vicinity of the area where Perez and Flores encountered each other. Pastore did not see the interaction between Flores and the service horse.[33]

---

[26] ROA.25-50311.5083.
[27] ROA.25-50311.5085-5086; ROA.25-50311.293 at timestamp 02:14:00.
[28] ROA.25-50311.5087.
[29] ROA.25-50311.5087-5088.
[30] ROA.25-50311.5089.
[31] ROA.25-50311.5089-5090.
[32] ROA.25-50311.5090-5091.
[33] ROA.25-50311.4892-4894.

Pierron testified that he saw Perez run through a crowd toward the mounted horses, and Pierron soon followed Perez.[34] When he got to the scene, Pierron saw Flores pull his arm out of Perez's grasp and start to pull away from Perez.[35] Since he did not see the initial interaction between Flores and the service horse, Pierron did not know why Perez was attempting to detain Flores.[36] Pierron had no involvement with the takedown of Flores and did not touch Flores until Flores was on the ground.[37] Pierron and Pastore assisted Perez in trying to handcuff Flores as Flores resisted efforts to put his hands behind his back.[38] Pierron testified that the officers needed to get Flores handcuffed as soon as possible since they did not know if he had any weapons and the street was crowded.[39] Pierron grabbed Flores's right hand and tried to get Flores's arm behind his back so he could be handcuffed but Flores resisted by flexing his arms.[40] Pastore held on to Flores's legs as Flores resisted putting his hands behind his back until officers were able to handcuff Flores.[41] None of the officers struck Flores with their hands or performed any knee strikes or kicks during the incident.[42]

---

[34] ROA.25-50311.895.
[35] ROA.25-50311.4895–4896.
[36] ROA.25-50311.4897.
[37] ROA.25-50311.4896.
[38] ROA.25-50311.4897–4898.
[39] ROA.25-50311.4897–4898.
[40] ROA.25-50311.4898-4900; ROA.25-50311.381 at timestamp 02:14:08.
[41] ROA.25-50311.382 at timestamp 01:14:04.
[42] ROA.25-50311.4902; ROA.25-50311.5088.

After Flores was handcuffed, the officers walked him to a sidestreet to await his transport for booking. While they awaited transport, Officer Kilgore identified Flores as the one who grabbed his horse's reins by stating to Officer Pierron: "Yeah, that's him."[43] Kilgore told Pierron: "he grabbed my left rein and was holding it while making a circle and he hit him and hit that horse."[44]

Flores was charged with interference with a police service animal, resisting arrest and resisting transport, and these charges were later dismissed. Flores alleges that as a result of the force the officers used on him during the incident, he suffered head, back and shoulder injuries.

## SUMMARY OF ARGUMENT

The District Court's ruling denying the motion for summary judgment filed by Officers Perez, Pierron and Pastore based on the defense of qualified immunity should be reversed because the District Court erred in its examination of both prongs of the qualified immunity analysis. In its examination of whether the force used by the officers was clearly excessive and objectively unreasonable, the District Court evaluated the officers' uses of force primarily from the perspective of Flores rather than the perspective of a reasonable officer on the scene. Additionally, the District Court denied qualified immunity largely because it determined there were factual

---

[43] **ROA.25-50311.383** at timestamp 02:15:32.
[44] **ROA.25-50311.383** at timestamp 02:15:45.

disputes as to (1) whether Flores pulled the horse's reins; (2) the degree of force Flores used to pull the reins and (3) whether the horse turned its head or whole body as a result of Flores's interference. The District Court erred in denying summary judgment based on these factual disputes because these factual disputes are not material to the reasons the officers used force. While these factual issues may be material to the issue of whether Flores committed the underlying offense of interference with a service animal, they are not material to the officers' actual uses of force which were the result of Flores actively resisting detention and arrest.

In its examination of the second prong of the qualified immunity analysis which asks whether the unlawfulness of the officers' conduct was clearly established, the District Court erred in finding that the officers had fair notice that their actions were objectively unreasonable. A number of Fifth Circuit cases have found that officers were entitled to qualified immunity when they used considerably more force on resisting suspects than the officers in this case used on Flores who was actively resisting arrest by pulling his arms out of Officer Perez's grasp on more than one occasion and actively resisting the officers' efforts to handcuff him. Since the officers are entitled to qualified immunity, this Court should reverse and render in favor of the Appellant officers.

# ARGUMENT

## A. Standard of Review:  Qualified Immunity and Interlocutory Appeal

This Court stated in *Morrow v. Meachum* that "[q]ualified immunity includes two inquiries.[45] The first question is whether the officer violated a constitutional right. The second question is 'right at issue was clearly established at the time of the alleged misconduct.'"[46] On appeal, this Court can "decide one question or both."[47] In *Mullenix v. Luna,* the Supreme Court mandated: "[p]ut simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[48]

This Court reviews the denial of a motion for summary judgment *de novo.[49]* As this Court stated in *Garcia:* "[s]ince this is an interlocutory appeal of the district court's denial of qualified immunity on summary judgment, [the Court's] review is generally limited to the extent that it turns on an issue of law."[50] Generally, "[w]hen the district court identifies a factual dispute, as it did here, we consider only whether the district court correctly assessed the 'legal significance' of the facts it 'deemed sufficiently supported for the purposes of summary judgment.'"[51] This Court may

---

[45] *Morrow v. Meachum* 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up).
[46] *Id.*
[47] *Id.* (citing *Pearson v. Callahan,* 555 U. S. 223, 232 (2009)).
[48] *Mullenix v. Luna,* 577 U.S. 7, 12 (2015).
[49] *Garcia v. Orta,* 47 F.4th 343, 348 (5th Cir. 2002)(citing *Joseph ex rel. Est. of Joseph v. Bartlett,* 981 F.3d 319, 331 (5th Cir. 2020).
[50] *Id.*
[51] *Id.* {citing *Cole v. Carson,* 935 F.3d 444, 452 (5th Cir. 2019).

review the legal materiality of the district court's identified fact issue precluding qualified immunity.[52]

## B.  Qualified Immunity and Plaintiff's Claims of Excessive Force

### 1.  The Qualified Immunity Standard

"The doctrine of qualified immunity immunizes government officials acting within their discretionary authority from civil damages if their conduct does not violate clearly established constitutional law of which a reasonable person would have known."[53] Whether an individual is entitled to qualified immunity at the summary judgment stage is determined by following a two-part analysis.  In one part of the analysis, the court must determine whether the facts, taken in the light most favorable to the party asserting the injury, show that the official violated a "clearly established" constitutional right.[54]  If there is no constitutional violation, the inquiry ends in favor of the official asserting qualified immunity.[55] In the other part of the analysis, the court must determine whether the official's conduct was objectively reasonable in light of the clearly established law.[56] In other words, courts look to whether "it would be clear to a reasonable officer that his conduct was unlawful in

---

[52] *Garcia,* 47 F.4th at 349.

[53] *Modica v. Taylor,* 456 F.3d 174, 179 (5th Cir. 2006).

[54] *Price v. Roark,* 256 F.3d 354, 369 (5th Cir. 2001).

[55] *Mace v. City of Palestine,* 333 F.3d 621, 624 (5th Cir. 2003).

[56] *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled on the other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009).

the situation confronted."[57] Qualified immunity protects officials who merely make a mistake in judgment, and it shields "all but the plainly incompetent or those who knowingly violate the law."[58] Thus, when a defendant asserts qualified immunity, the burden is on the plaintiff to produce evidence to pierce that immunity.[59]

## 2. Excessive Force Standard

To succeed on an excessive force claim under 42 U.S.C. § 1983 and overcome qualified immunity, a plaintiff bears the burden of showing "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the excessiveness of which was clearly unreasonable."[60]   "In gauging the objective reasonableness of the force used," the court "must balance the amount of force used against the need for the force."[61]  This objective standard requires a court to focus on the facts and circumstances confronting the officer, without regard to the officer's subjective intent or motivation.[62]   When looking at the facts of the case, courts should focus on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

---

[57] *Price*, 256 F.3d at 369.
[58] *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).
[59] *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 253 (5th Cir. 2005).
[60] *Manis v. Lawson*, 585 F.3d 835, 843 (5th Cir. 2009).
[61] *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).
[62] *Ramirez v. Knoulton*, 542 F.3d 124, 128-29 (5th Cir. 2008).

resisting arrest or attempting to evade arrest by flight."[63] *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 411 (5th Cir. 2009).

In all cases, the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight."[64]  Courts should also recognize that police officers must make split-second decisions in stressful and unpredictable circumstances.[65]

It is well-settled that police officers have the right to use some degree of force (or threat of force) to make an arrest or investigatory stop.[66]  In general, officers may use "measured and ascending force" in response to a suspect's recalcitrant or escalating noncompliance.[67]  Courts in the Fifth Circuit have held that officers may use kicks, strikes, and even impact weapons to bring arrestees under control when they refuse to be handcuffed.  For instance, in *Gonzalez v. Allen*, a district court granted summary judgment in favor of three police officers who used punches to the head, kicks, and even strikes to the head with a flashlight, on a carjacking suspect who fled, but was on the ground and simply refusing to be handcuffed.[68]  Similarly, in *Byrd v. City of Bossier*, a district court granted summary judgment to multiple

---

[63] *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 411 (5th Cir. 2009). Not all of these factors must be present for an officer's use of force to be reasonable.  It is usually sufficient to justify a use of force that the officer reasonably believed that the suspect posed a threat to the officer or others.  *Rockwell v. Brown*, 664 F.3d 985, 992 (5th Cir. 2011).

[64] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[65] *Id.*

[66] *Id.*

[67] *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012).

[68] *Gonzalez v. Allen*, 2013 WL 5157188 *1-2 (S.D. Tex. 2013) (Costa, J.).

officers who admitted striking plaintiff with closed fists after plaintiff fled, was suspected of having a weapon, and refused to be handcuffed.[69] Finally, in *Poole*, the officers used considerable force (including strikes and Tasers) to subdue a non-fleeing and non-violent suspect who resisted by refusing to be handcuffed.[70]

### 3. The District Court erred in denying qualified immunity to Officer Perez.

The District Court erred in denying qualified immunity to Officer Perez with respect to performing the takedown of Flores and Perez's limited use of force while attempting to handcuff Flores on the ground. Flores's excessive force claim against Perez fails because any injury that he received did not result from a use of force that was excessive to the need and the excessiveness of which was clearly unreasonable. Importantly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[71]

---

[69] *Byrd v. City of Bossier,* 23 F.Supp.3d 665, 669 (W.D. La. 2014).
[70] *Poole,* 691 F.3d at 629.
[71] *Graham,* 490 U.S. at 396-397.

### C. Perez's takedown of Flores was not clearly excessive and objectively unreasonable.

In its evaluation of the *Graham* factors, the District Court did not evaluate Officer Perez's actions solely from the perspective of a reasonable officer at the scene without the benefit of hindsight. Instead, the District Court evaluated many of the factors using hindsight and the knowledge after the fact that Perez's concerns about the safety of the mounted officer and the crowd did not materialize. For example, the District Court's analysis of the severity of the crime and immediate safety threat factors focused on the fact that Officer Kilgore did not actually lose control of the horse following Flores's actions, and that Flores's actions did not deter the horse from proceeding in its normal path.[72] The District Court concluded that it could not say that a reasonable officer would have perceived such a danger from Flores allegedly pulling the horse's reins that would warrant the takedown.[73]

But, Perez did not perform the takedown because Flores pulled the reins of the horse. Perez performed the takedown because Flores resisted arrest by pulling his hand and arm out of Perez's grasp when Perez attempted to detain Flores for interfering with the horse.[74] The reason for the initial detention and the reason for the takedown were separate and distinct. The District Court acknowledged that

---

[72] **ROA.25-50311.4664–4667**.
[73] **ROA.25-50311.4667**.
[74] **ROA.25-50311.5082–5083**.

15

resisting arrest is a more serious crime than interference with a police animal[75] but did not analyze the first two *Graham* factors from the perspective that the takedown was the result of Flores resisting arrest. When these two factors are analyzed from the perspective of an officer who is lawfully detaining a suspect and that suspect resists arrest by pulling from the officer's grasp, both factors weigh against Flores particularly in light of the large crowd in the vicinity of the arrest.

Moreover, in its analysis of the second *Graham* factor, the District Court identified "factual dispute[s]" that, when viewed in the light most favorable to Flores, prevent the District Court from finding that a reasonable officer would have perceived such a danger from Flores pulling the reins that would warrant performing a takedown.[76] The factual disputes identified by the District Court include "whether Flores pulled Lucky's reins, to what extent of force Flores may have used if he actually pulled the reins, and whether the horse turned its head or whole body as a result of the interference."[77]

However, these alleged factual disputes are not material to Perez's decision to perform the takedown. A fact is material if it "might affect the outcome of the suit."[78] Whether Flores actually pulled the horse's reins and what force he may have used to pull the reins as well as whether the horse turned its head or whole body may all be

---

[75] **ROA.25-50311.4664–4665.**
[76] **ROA.25-50311.4666–4667.**
[77] **ROA.25-50311.4666.**
[78] *Thomas v. Tregre,* 913 F.3d 458, 462 (5th Cir. 2019)(citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)).

material to a claim that Flores was falsely arrested for interference with a service animal. But Flores is not making a false arrest claim. Instead, he is only asserting a claim that Perez used excessive force when Perez performed the takedown and used force in attempting to handcuff Flores after the takedown. As stated above, Perez performed the takedown because Flores resisted arrest by pulling out of Perez's grasp and shifting his body away from Perez.[79] Perez's use of limited force while on the ground was the result of Flores resisting the officers' efforts to handcuff him.[80] The factual disputes identified by the District Court simply have no bearing on the issue of whether Flores resisted Perez's efforts to detain and arrest him. From the perspective of a reasonable officer at the scene, Flores's actions in resisting arrest presented a potential safety threat to officers and pedestrians in the vicinity.

The District Court also erred in its analysis of the third *Graham* factor: whether the suspect is actively resisting arrest or attempting to evade arrest by flight. First, the District Court correctly noted that "the Fifth Circuit has made clear that '[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest' for purposes of Texas Penal Code §38.03(a)---and, it stands to reason, for purposes of excessive-force analysis."[81] Second, it is clear from police body camera video that when Officer Perez first

---

[79] **ROA.25-50311.5082-5083.**
[80] **ROA.25-50311.5087-5091.**
[81] **ROA.25-50311.4669.** *See Buehler v. Dear,* 27 F.4th 969, 989 (5th Cir. 2022).

grabbed Flores's arms, Flores pulled his right arm from Perez's grasp and thus actively resisted arrest under Texas law.[82] From the perspective of a reasonable officer on the scene, Flore's action in pulling his arm out of Perez's grasp constituted active resistance.

Yet, the District Court analyzed this *Graham* factor primarily by reviewing the evidence from the perspective of Flores instead of a reasonable officer at the scene. The District Court noted that Flores "alludes that he was unaware that the initial arm grab came from an officer," and that from Flores's perspective, Perez's police badge may have been obstructed from Flores's view.[83] The District Court also stated that there appears to be a question of fact as to whether Flores understood he was being arrested prior to the takedown.[84] But, the historical facts of the incident are not supposed to be viewed and analyzed by the court from the perspective of the arrestee. Instead, the court asks how a reasonable officer would have perceived the historical facts of the incident without the 20/20 vision of hindsight.[85] Moreover, just because there may be more than one reasonable tactic for an officer to deploy in a situation when dealing with a noncompliant suspect, does not mean that the tactic chosen by the officer is objectively unreasonable. "The question is not simply

---

[82] **ROA.25-50311.5082; ROA.25-50311.383 beginning at timestamp 02:14:01.** *See Buehler,* 27 F.4th at 984.

[83] **ROA.25-50311.4668.**

[84] **ROA.25-50311.4668.**

[85] *Griggs v. Brewer,* 841 F.3d 308, 313 (5th Cir. 2016); *Hill v. Carroll Cty., Miss.,* 587 F.3d 230, 234 (5th Cir. 2009).

whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."[86]

When one views Perez's actions from that standpoint, his actions in performing a takedown after Flores had actively resisted by pulling his arm out of Perez's grasp were not objectively unreasonable. The District Court erred in concluding that genuine issues of material fact preclude summary judgment in favor of Perez for the takedown maneuver.

### D.  The officers' limited uses of force while attempting to handcuff Flores were not clearly excessive and objectively unreasonable.

After Flores was on the ground, he continued to not comply with officers' instructions. Perez and other officers continued to instruct Flores to put his hands behind his back so they could handcuff him, but Flores continued to resist.[87] While on the ground, Perez briefly placed his knee on Flores's beltline and held onto Flores's left arm while officers attempted to roll Flores onto his stomach to handcuff him.[88] When Flores broke Perez's grasp on his left arm, Perez briefly placed his hand on Flores's face.[89] Pierron merely held onto Flores's right arm and attempted to move

---

[86] *Ramirez v. Knoulton,* 542 F.3d 124, 130 (5th Cir. 2008) quoting *United States v. Sharpe,* 470 U.S. 675, 687, 105 S. Ct. 1568 (1985).
[87] ROA.25-50311.0935 at timestamp 02:14:04; ROA.25-50311.5087; ROA.25-50311.4897–4898.
[88] ROA.25-50311.5087-5090.
[89] ROA.25-50311.5087-5090.

Flores's arm behind his back so officers could to handcuff Flores.[90] Pastore held onto Flores's legs while efforts were made to handcuff Flores.[91]

The District Court's analysis of the force Perez used while on the ground again improperly focused on the perspective of Flores rather than the perspective of a reasonable officer on the scene. The District Court noted that Flores claims that from his perspective it was impossible to comply with the orders to place his hands behind his back because of the manner in which the officers held his arms.[92] Yet, if one analyzes each officer's actions separately, instead of as a group, and from the perspective of a reasonable officer on the scene, it is clear that each officer's actions while Flores was on the ground were not objectively unreasonable.

Flores offered no evidence that Pierron and Pastore even knew why Perez detained Flores when Pierron and Pastore assisted with the efforts to handcuff Flores. From the perspective of a reasonable officer in the positions of Pierron and Pastore, that reasonable officer sees Perez perform a takedown of a suspect and then struggle to get the suspect's hands behind his back to handcuff him. In the primary case relied upon by the District Court, the Fifth Circuit affirmed the district court's grant of summary judgment to an officer who merely grabbed the suspect's arm while the suspect was being handcuffed.[93] There, the Fifth Circuit held that "given that it is

---

[90] ROA.25-50311.4898-4900; ROA.25-50311.381 at timestamp 02:14:08.
[91] ROA.25-50311.382 at timestamp 01:14:04.
[92] ROA.25-50311.4671.
[93] *Trammell v. Fruge*, 868 F.3d 332, 343 n. 9 (5th Cir. 2017).

reasonable for an officer to attempt to grab a noncompliant suspect's arm in an attempt to handcuff the suspect," the plaintiff had not raised sufficient facts to allege an independent excessive force violation against that officer, and the officer had qualified immunity.[94]   Similarly, the very limited uses of force by Pierron in attempting to move Flores's arm behind his back and Pastore in holding Flores's legs were reasonable under the facts as a reasonable officer in their positions would perceive them.

Likewise, Perez's limited uses of force to control Flores while he was on the ground as officers attempted to handcuff were also objectively reasonable. The body camera videos demonstrate that it clearly was a struggle for the officers to handcuff Flores.[95] Viewing Perez's actions on the ground from the perspective of a reasonable officer on the scene, rather than from Flores's perspective, a reasonable officer would not conclude that Perez holding Flores's arm and briefly using his body weight to control Flores was objectively unreasonable. None of the officers punched, kicked or used knee strikes on Flores. Even these actions have been determined to be reasonable when suspects resist handcuffing.[96] Perez's actions during the struggle to handcuff Flores were not objectively unreasonable and clearly excessive.

---

[94] *Id.*

[95] **ROA.25-50311.293 at timestamp 02:14:00; ROA.25-50311.381 at timestamp 02:14:08; ROA.25-50311.382 at timestamp 01:14:04.**

[96] *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012); *Byrd v. City of Bossier*, 23 F.Supp.3d 665, 669 (W.D. La. 2014); *Gonzalez v. Allen*, 2013 WL 5157188 *1-2 (S.D. Tex. 2013) (Costa, J.).

### E. The District Court erred in determining that the unlawfulness of the officers' conduct was clearly established at the time of this incident.

The District Court found that "the right to be free from this type of excessive force was clearly established in this case and that, if a jury accepts Plaintiff's version of the facts as true, particularly as to what occurred in the moments before Officer Perez used the takedown maneuver, the jury could conclude that the officers violated Flores's clearly established right to be free from excessive force."[97] The District Court's erred in its analysis of this prong of the qualified immunity inquiry.

"[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."[98] "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"[99]

Flores can point to no cases that would have put Perez, Pierron and Pastore on notice that every reasonable officer in their positions would have concluded that their respective actions were a violation of Flores's clearly established rights. In his response to the officers' motion for summary judgment, Flores cited *Trammel v. Fruge* where the Fifth Circuit reversed a grant of qualified immunity because the

---

[97] **ROA.25-50311.4676.**
[98] *Kisela v. Hughes,* 584 U.S. 100, 138 S. Ct. 1148, 1153 (2018), quoting *Mullenix v. Luna,* 577 U.S. 7, 136 S. Ct. 305 (2015)(*per curiam).*
[99] *Kisela,* 138 S. Ct. at 1153, quoting *Plumhoff v. Rickard,* 572 U.S. 765, 134 S. Ct. 2012 (2014).

plaintiff's only physical resistance prior to being tackled and pummeled by several officers was his attempt to pull his arm away.[100]

There, officers responded to a call about an intoxicated motorcycle driver who had crashed his motorcycle after leaving a club.[101] After the suspect refused to answer an officer's questions, the officer believed he had probable cause to arrest the suspect for public intoxication and grabbed the suspect's arm as he told the suspect to put his hands behind his back.[102] The suspect pulled his arm back and told the officer not to grab him because it hurt.[103] The officer then grabbed the other arm of the suspect but again the suspect pulled away.[104] The officer then executed a knee strike which caused the suspect to lose balance, and another officer then put the suspect in a headlock while he and two officers took the suspect to the ground.[105] While on the ground, the officers attempted to grab the suspect's arms and after he refused to put his hands behind his back, the suspect told the officers that his arm was fused.[106] Officers then "pummeled" him with their knees and fists in an attempt to get his arms behind his back and the suspect contended that the officers did so

---

[100] *Trammel v. Fruge,* 868 F.3d 332, 342 (5th Cir. 2017).
[101] *Trammell,* 868 F.3d at 337.
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*

even after he told them about his fused arm.[107] Eventually, the officers were able to subdue and handcuff the suspect.[108]

The Fifth Circuit in *Trammel* reversed the district court's grant of summary judgment in favor of the officers and held that a reasonable jury could find that the suspect's pulling away from the officers along with the other circumstances of the arrest did not justify the officers' decision to tackle him to the ground.[109] The Fifth Circuit also held that there was a question of fact as to whether the force used to gain control of the suspect's arms while on the ground was excessive to the need for force.[110] The Fifth Circuit found that a jury could reasonably infer that the officers heard the suspect's plea about his fused arm but nevertheless continued to beat him without consideration for his limited mobility and strength.[111]

The facts of *Trammel* are distinguishable from the facts of this incident and, as a result, *Trammel* would not have put Perez on notice that the force he used on Flores violated clearly established law. The officers in *Trammel* used more force on the suspect there both before and after the takedown than Perez used in this incident. In *Trammel,* an officer struck the suspect with a knee, and another used a headlock before all three officers tackled him to the ground.[112] Perez, on the other hand, did

---

[107] *Id.* at 342.
[108] *Id.* at 338.
[109] *Id.* at 342.
[110] *Id.*
[111] *Id.*
[112] *Id.* at 337.

not strike Flores in any manner before he took him to the ground. Moreover, the officers in *Trammel* "pummeled" the suspect with punches and knee strikes while he was on the ground after the suspect had told them that his arm was fused.[113] This, again, is far more force than Perez used on Flores while Flores was on the ground. Perez did not punch or knee strike Flores at all while he was on the ground. Instead, Perez held Flores's arm and used his body weight to try to control Flores while officers attempted to handcuff him. This is a far cry from the pummeling of the suspect in *Trammel.* As a result, *Trammel* would not have placed Perez on notice that his actions in this incident violated clearly established law.

*Trammel* also would not have placed Pierron and Pastore on notice that their actions in holding Flores's arm and legs while Flores was on the ground violated clearly established law. Here, unlike the officers in *Trammel,* Pierron and Pastore were not involved in the initial takedown of Flores and did not strike Flores in any manner. Neither Pierron holding Flores's arm nor Pastore holding his legs while Flores was being handcuffed support independent excessive force claims against them. As a result, the *Trammel* decision would not have put the officers on notice that it was clearly established that their limited actions of restraining Flores violated the law. This is particularly true where the Fifth Circuit in *Trammel* affirmed this Court's grant of summary judgment in favor of Officer Ingles who only grabbed the

---

[113] *Id.* at 342.

25

suspect's arm during the struggle, just like Pierron and Pastore merely grabbed Flores's arm and legs.

Instead, Fifth Circuit cases where the officers increased force as a suspect continued to resist reveals that officers in those situations, like this one, are entitled to qualified immunity. In *Tucker v. City of Shreveport,* the Fifth Circuit reversed a district court's denial of summary judgment where the district court had found that the officers' "immediate resort to a takedown maneuver was not necessarily a measured and ascending response to the need to place handcuffs on a non-struggling [suspect] without first articulating that he was under arrest and giving him a reasonable opportunity to allow himself to be handcuffed."[114]  On appeal, the Fifth Circuit noted that "it is easy for us—having the benefit of hindsight and multiple angles of video to scrutinize, frame by frame—to question whether [the suspect] might have been handcuffed without scuffle or injury if [Officer] McIntire had immediately verbally consulted with [Officer] Cisco upon arrival, told [the suspect] that he was under arrest, and/or repeated Cisco's 'put your hands behind your back' instruction to [the suspect] before forcefully pulling him to the ground."[115]  The Fifth Circuit held that at a minimum, the second officer on the scene could reasonably question whether the first arriving officer had sufficient control

---

[114] *Tucker v. City of Shreveport,* 998 F.3d 165 (5th Cir. 2021).
[115] *Id.* at 176.

over the scene or instead required immediate officer assistance.[116] The Fifth Circuit
noted: "[a]nd, while consultation amongst the officers and [the suspect] might have
quelled such concerns, hesitation for that purpose, absent an ability to predict the
future with certainty, likewise could well have operated to the officers' detriment."[117]
The Fifth Circuit held that the officers had qualified immunity for the takedown since
the circumstances created a scenario sufficiently "tense, uncertain and rapidly
evolving" to place the officers' takedown, even if mistaken, within the protected
"hazy border between excessive and acceptable force."[118]

Likewise, the Fifth Circuit held in *Tucker* that the officers had qualified
immunity for their use of multiple strikes while struggling with the suspect on the
ground when the suspect pulled his arms from the officers' grasp and failed to put
them behind his back.[119] The Fifth Circuit held that, given the suspect's refusal to
comply with the officers' verbal directives to put his hands behind his back and quit
moving, it would not have been evident to the officers, based on clearly established
law, that they were not entitled to use heightened force in order to gain control of the
suspect's hands and place him in handcuffs.[120]

---

[116] *Id.*

[117] *Id.* at 180.

[118] *Id.*

[119] *Id.* at 185.

[120] *Id.* at 184; *see also Griggs v. Brewer,* 841 F.3d 308, 314 (5ᵗʰ Cir. 2016)(takedown and non-deadly punches to gain control of actively resisting suspect who refused to comply with commands is not constitutionally unreasonable).

Other Fifth Circuit cases have found that officers did not use excessive force when using similar or even more force than that used by Perez in this incident. In *Griggs v. Brewer,* an officer performed a field sobriety test on the plaintiff, and when the officer told the plaintiff to stop performing a one-legged stand sobriety test and to put his hands behind his back, the plaintiff "lurched to one side and said 'no, no.'"[121] The officer "immediately placed [the plaintiff] in a choke hold, swept his legs out from under him, and body-slammed him onto the nearby grass" even though the officer knew the plaintiff was unarmed since he had already frisked him.[122] Once on the ground, the officer punched the plaintiff several times with a closed fist to the back of the head as he struggled to gain control of the plaintiff's hands.[123] While on the ground, the plaintiff's hands were under his stomach, and while officers attempted to handcuff him, the plaintiff continued to tuck his arms under him even though the officer was punching him.[124] The Fifth Circuit held that the officer was entitled to qualified immunity for the takedown and the punches since the officer's conduct was not unreasonable in the light of clearly established law.[125]

If the officer in *Griggs* was entitled to qualified immunity when he performed a choke hold and takedown on a subject that he knew was unarmed and then punched

---

[121] *Griggs v. Brewer,* 841 F.3d 308, 313 (5th Cir. 2016).
[122] *Id.*
[123] *Id.* at 311; 315.
[124] *Id.*
[125] *Id.*

him several times with a closed fist while on the ground, it stands to reason that Perez is also entitled to qualified immunity. Perez used less force on Flores in this incident than the officer used in *Griggs,* and Perez did not know if Flores was armed. The law was not clearly established so that every reasonable officer would have understood that the force used by Perez in this incident was unlawful. Any other reasonable officer who had read the *Griggs* opinion would conclude that Perez's use of force in this incident was constitutionally reasonable.

Other cases are instructive as well. In *Buehler v. Dear,* 27 F.4th 969, 989 (5th Cir. 2022), the Fifth Circuit held that this Court erred in denying officers' motions for summary judgment on excessive force claims when they took the suspect to the ground after minimal resistance from the suspect.[126] There, officers arrested the suspect for a relatively minor offense, interference with a peace officer's official duties, and took him to the ground when he took a few steps away from the officers after an officer told him he was under arrest.[127] An officer then grabbed the suspect's wrists and he and two other officers then performed a takedown.[128] Officers then held him in a prone position and another officer held his legs until the officers were able to handcuff him.[129] The Fifth Circuit cited a number of cases supporting the

---

[126] *Buehler v. Dear,* 27 F.4th 969, 989 (5th Cir. 2022).
[127] *Id.* at 977-78.
[128] *Id.* at 978.
[129] *Id.*

officers' position that their use of force did not violate clearly established Fourth Amendment law and reversed the denial of summary judgment.[130]

In *Defrates v. Podany,* the Fifth Circuit affirmed the district court's grant of summary judgment for a police officer who used force while arresting a suspect for criminal trespass at an off-campus school event.[131] The officer grabbed the suspect's arm and attempted to move his arms behind his back to handcuff him, but the suspect pushed back against a wall.[132] The officer then used a takedown maneuver to wrestle the suspect to the ground and then kneed the suspect in the neck/head area to keep him on the ground.[133] The officer then gained control of the suspect by placing his weight on the suspect's upper back and neck and putting him in a wrist lock until an off-duty officer arrived who handcuffed the suspect.[134]  The suspect alleged that the officer's use of excessive force caused him to suffer severe brain trauma.[135] The Fifth Circuit stated that while the officer perhaps could have used more verbal commands or tried different tactics, the Court's job was not to decide the best course of action, but instead was "to determine whether [the suspect] has identified law clearly placing the unreasonableness of [the officer's] actions under the circumstances

---

[130] *Id.; see Priest v. Grazier,* 860 Fed. App'x 343, 347 (5th Cir. 2021); *Ibarra v. Harris Cty.,* 243 Fed. App'x 830, 835 (5th Cir. 2007); *Tennyson v. Villarreal,* 801 Fed. App'x, 295, 296 (5th Cir. 2020); *Mathews v. Davidson,* 674 Fed. App'x 394, 396 (5th Cir. 2017); *Cadena v. Ray,* 728 Fed. App's 293, 296 (5th Cir. 2018); *Robles v. Ciarletta,* 797 Fed. App'x 821, 827-28 (5th Cir. 2019).
[131] *Defrates v. Podany,* 789 Fed. App'x 427 (5th Cir. 2019).
[132] *Id.* at 429-30.
[133] *Id.* at 430.
[134] *Id.*
[135] *Id.*

beyond debate."[136] The Court noted that "[this] is an uphill battle for any plaintiff" and found that the officer was entitled to qualified immunity.[137]

Any reasonable officer who reads the above opinions would conclude that the officers' uses of force in this incident were constitutionally reasonable. Since the law was not clearly established so that every reasonable officer would have understood that the force used by Perez, Pierron and Pastore was unlawful, the officers are entitled to qualified immunity.

### CONCLUSION AND PRAYER FOR RELIEF

In conclusion, Officers Perez, Pierron and Pastore assert that they are entitled to qualified immunity under both prongs of the defense as to all live claims asserted by Appellee. The District Court erred in holding otherwise. Appellants Felix Perez, Jackson Pierron and Jorge Pastore request that this Court reverse the District Court's denial of their summary judgment motion based on their entitlement to qualified immunity and render a take-nothing judgment in their favor, as they are entitled to the defense of qualified immunity.

RESPECTFULLY SUBMITTED,

DEBORAH THOMAS, City Attorney
SARA R. SCHAEFER, Acting Chief, Litigation

/s/ Gray Laird

---

[136] *Id.* at 435.

[137] *Id.*

H. GRAY LAIRD III
Assistant City Attorney
State Bar No. 24087054
gray.laird@austintexas.gov
Monte L. Barton Jr.
Assistant City Attorney
State Bar No. 24115616
monte.barton@austintexas.gov
City of Austin Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone: (512) 974-1342
Facsimile: (512) 974-1311
Telephone: (512) 974-2409

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing brief on all parties or their

attorneys of record, in compliance with the Federal Rules of Appellate Procedure,

this 18th day of August, 2025, as follows:


/s/ H. Gray Laird
H. GRAY LAIRD
Counsel for Appellants

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. of App. P. 32(a)(7)(B) because this brief contains 6,787 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

3.      The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.3, may result in the Court's striking of the brief and imposing sanctions against the person signing the brief.

/s/ H. Gray Laird
H. GRAY LAIRD
Counsel for Appellants